UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

RACQUEL K.,

                Plaintiff,

     -v-

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

_____

25-CV-00108-MJR

DECISION AND ORDER

Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case.

Plaintiff Racquel K.[1] ("Plaintiff") brings this action, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") pursuant to the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, Plaintiff's motion (Dkt. No. 8) is denied, and defendant's motion (Dkt. No. 13) is granted.

---

[1] In accordance with the District's November 18, 2020, Standing Order, plaintiff is identified by first name and last initial.

**BACKGROUND**[2]

Plaintiff filed applications for DIB and SSI in October 2021, alleging disability since January 2019 due to narcolepsy/excessive sleep, vertigo or dizziness, depression, and feeling tired and weak. (Administrative Transcript ["Tr."] 347-56, 397). Her applications were denied initially and upon reconsideration, and she requested a hearing before an Administrative Law Judge. (Tr. 152-55, 245-47). Plaintiff appeared with counsel and testified before ALJ Joshua Pinkus in November 2023 and April 2024. (Tr. 46-120). On June 13, 2024, the ALJ issued a decision finding Plaintiff not disabled (Tr. 18-39), which became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on December 3, 2024. (Tr. 1-4). This action followed.

**DISCUSSION**

I.    *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential.  Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted).  "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts."  *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014).  "Where the Commissioner's decision

---

[2] The Court presumes the parties' familiarity with Plaintiff's medical history, which is summarized in the moving papers.

rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. Id.

II.      Standards for Determining "Disability" Under the Act

A "disability" is an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment

or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." Id. §§423(d)(2)(A), 1382c(a)(3)(B). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." Id. §§404.1520(b), 416.920(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." Id. §§404.1520(b), 416.920(b). Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." Id. §§404.1520(c), 416.920(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." Id. §§404.1520(c), 416.920(c). As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. Id.

§§404.1520(c), 416.920(c).  Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions:  first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1.  Id. §§404.1520(d), 416.920(d).  If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience.  Id. §§404.1520(d), 416.920(d).

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five.  Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record.  Id. §§404.1520(e), 416.920(e).  RFC "is the most [the claimant] can still do despite [his or her] limitations."  Id. §§404.1545(a)(1), 416.945(a)(1).  The Commissioner's assessment of the claimant's RFC is then applied at steps four and five.  At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work."  Id. §§404.1520(f), 416.920(f).  If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act.  Id. §§404.1520(f), 416.920(f).  Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work."  Id. §§404.1520(g)(1), 416.920(g)(1).  If the claimant can adjust to other work, he or she is

not disabled.  Id. §§404.1520(g)(1), 416.920(g)(1).  If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act.  Id. §§404.1520(g)(1), 416.920(g)(1).

The burden through steps one through four described above rests on the claimant. If the claimant carries his burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

III.    *The ALJ's Decision*

Preliminarily, the ALJ determined Plaintiff's last-insured date to be June 30, 2024. (Tr. 21). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her January 1, 2019, the alleged onset date. Next, at step two, the ALJ found that Plaintiff had the following severe impairments: idiopathic hypersomnia/narcolepsy; migraine headaches; benign paroxysmal positional vertigo/postural hypotension; depression; anxiety; and body dysmorphia. (Tr. 21). At the third step, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the listed impairments set forth in Appendix 1 of 20 C.F.R. Part 404, Subpart P. (Tr. 22-26). Prior to step four, the ALJ determined that Plaintiff retained the RFC to perform a range of work across all exertional levels except with the following nonexertional limitations:

- never climb ramps, stairs, ladders, ropes or scaffolds;

- occasionally balance as defined by the *Selected Characteristics of Occupations* (SCO);

- must avoid ordinary hazards in the workplace, such as unprotected heights and moving mechanical parts;

- unable to operate a motor vehicle as part of the job;

- quiet noise environment as defined in the SCO;

- occasional exposure to respiratory irritants, including fumes, dust, odors, gases, and poor ventilation;

- can understand and remember simple instructions;

- can use judgment to make simple work-related decisions and carry out simple instructions;

- can deal with occasional changes in a routine work setting; and

- cannot perform work requiring a specific production rate, such as assembly line work or work that requires hourly quotas.

(Tr. 26). At step four, the ALJ found that Plaintiff could not perform her past relevant work. (Tr. 37-38). At step five, the ALJ concluded that Plaintiff could perform other work existing in significant numbers in the national economy. (Tr. 38-39). The ALJ therefore found that Plaintiff was not disabled under the Act. (Tr. 39).

IV.   *ALJ's Decision is Supported by Substantial Evidence*

The RFC is the most an individual can do despite his limitations and is based on all the relevant medical and other evidence of record, taking into consideration the limiting effects of all impairments. 20 C.F.R. §§ 404.1545, 416.945. "[A]n RFC finding is administrative in nature, not medical, and its determination is within the province of the ALJ." *Curry v. Comm'r of Soc. Sec.*, 855 F. App'x 46, 49 n.3 (2d Cir. 2021) (citing 20 C.F.R. § 404.1527(d)(2)). The RFC assessment is reserved to the Commissioner, and

the ALJ bears the final responsibility for making RFC determinations. *Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022) (citation omitted). In making the RFC determination, the ALJ must consider all relevant medical and other evidence, including any statements about what the claimant can still do provided by any medical sources. See 20 C.F.R. §§ 404.1545(a)(3), 404.1546(c), 416.945(a)(3), 416.946(c). Furthermore, it is within the ALJ's discretion to resolve genuine conflicts in the evidence. *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002); *Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998) ("It is for the SSA, and not this court, to weigh the conflicting evidence in the record"); *see also Cage v. Comm'r of Soc. Sec.,* 692 F.3d 118, 122 (2d Cir. 2012) ("In our review, we defer to the Commissioner's resolution of conflicting evidence."). To this end, an ALJ also has the discretion to reject those portions of a medical opinion that are not supported by and are contrary to the evidence of record, while accepting those portions that are supported by the record evidence. See *Veino*, 312 F.3d at 588. Moreover, "[e]ven where the ALJ's determination does not perfectly correspond with any of the opinions of medical sources cited in her decision, []the ALJ was entitled to weigh all of the evidence available to make a [RFC] finding that was consistent with the record as a whole." *Trepanier v. Comm'r of Soc. Sec. Admin.*, 752 F. App'x 75, 79 (2d Cir. 2018) (citing *Schaal*, 134 F.3d at 504); *see Schillo,* 31 F.4th at 78 (explaining that "an ALJ's conclusion need not 'perfectly correspond with any of the opinions of medical sources cited in his decision,' because the ALJ is 'entitled to weigh all of the evidence available to make a residual functional capacity finding that [is] consistent with the record as a whole'") (quoting *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013)).

Here, the ALJ found that Plaintiff could perform a range of work across all exertional levels with additional nonexertional limitations. (Tr. 26-37). Plaintiff contends that the nonexertional limitations assessed by the ALJ are not supported by substantial evidence because they do not perfectly correspond with medical opinion evidence in the record. Plaintiff's argument is without merit.

Here, the limitations to climbing, balancing, loud noises, driving, and hazards are supported by the findings and opinion of consultative examiner Dr. John Schwab. (Tr. 1513-21). The ALJ considered Dr. Schwab's February 2024 medical opinion and found it persuasive because it was consistent with the longitudinal treatment notes as well as Dr. Schwab's own examination findings. (Tr. 37). Plaintiff argues that the ALJ erred in relying on Dr. Schwab's opinion because he is not a specialist. However, Plaintiff's argument is unpersuasive because while specialization is a factor, supportability and consistency are the two most important factors to be considered when assessing the persuasiveness of a medical opinion, and they are the only two factors that must be addressed in the ALJ's decision. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). The fact that Dr. Schwab is not a specialist does not take away from the ALJ's finding that the opinion is supported by the doctor's own findings and consistent with the record as a whole.

Plaintiff's argument that the mental limitations in the RFC finding are unsupported by substantial evidence also fails. In reaching the mental limitations, the ALJ considered Plaintiff's treatment notes in the record. (Tr. 33-35). The ALJ noted that Plaintiff received outpatient treatment for depression, anxiety, and body dysmorphia and found that mental status examination findings were generally unremarkable. (Tr. 33). For example, in November 2020, Plaintiff was found cooperative with rapid speech, logical thought

processes, intact memory, and fair insight and judgment. (Tr. 1189). The ALJ also considered consultative psychologist Dr. Christine Ransom's findings, which included fluent and intelligible speech, normal motor behavior and posture, coherent and goal-directed thought processes, full affect, neutral mood, intact attention, concentration, and memory, average cognitive functioning, and good insight and judgment. (Tr. 34-35, 586-87, 1505-06). In October 2023, Plaintiff was alert, oriented, and cooperative with normal gait and speech, full affect, linear and goal-directed thought processes, and fair insight and judgment. (Tr. 34, 1100). The ALJ also noted that while Plaintiff visited the hospital in November 2023 for feeling depressed, mental status examination findings showed she was alert and oriented with soft and coherent speech, anxious affect, goal-directed thought processes, and fair insight and judgment. (Tr. 34-35, 1266).

The ALJ also considered Plaintiff's subjective complaints. (Tr. 26-27). The ALJ noted that Plaintiff reported needing reminders for personal care and that she reported problems with memory, getting along with family and friends, concentration, completing tasks, and following instructions. (Tr. 26-27).

The ALJ further considered Dr. Ransom's May 2022 and February 2024 opinions that Plaintiff had no psychiatric impairments and limitations and found them less persuasive. (Tr. 36-37, 587-88, 1506-07). The ALJ noted that Dr. Ransom was a specialist that had evaluated Plaintiff, but that the record as a whole supported greater limitations, including the recent November 2023 emergency room visit. (Tr. 36-37). The ALJ also considered the opinion from State agency psychological consultant Dr. K. Lieber-Diaz who reviewed the record and found that Plaintiff had no severe mental impairments and found it only somewhat persuasive because the record supported

- 10 -

limitations in Plaintiff's ability to manage stress and adapt consistent with moderate limitations. (Tr. 34-35, 127-28).

Here, the ALJ reviewed the record as a whole and found that Plaintiff had severe mental impairments that limited her to a range of simple work with occasional changes in the routine work setting and no production rate work. (Tr. 26-37); *see Schillo*, 31 F.4th at 78.

Plaintiff's argument that the mental limitations in the RFC are not supported by substantial evidence because they are not directly supported by a medical opinion and that further development is required is required also fails.

First, Plaintiff's argument assumes that the mental limitations are not supported by substantial evidence because they are not directly supported by a medical opinion. However, the record contains over 1,000 pages of treatment notes and several medical opinions, and Plaintiff has not identified any particular evidence that is missing or makes the record incomplete. "The ALJ is not required to develop the record any further when the evidence already presented is 'adequate for [the ALJ] to make a determination as to disability.'" *Janes v. Berryhill*, 710 F. App'x 33, 34 (2d Cir. 2018) (*quoting Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996)); *see also Miller v. Comm'r of Soc. Sec. Admin.*, 784 F. App'x 837, 839 (2d Cir. 2019) (finding no failure to develop the record where the record contained no obvious gaps, the Commissioner "obtained records from multiple healthcare providers, including treating physicians, therapists, and evaluators," and the claimant failed to specify which records are missing or what such records would show); *Reices-Colon v. Astrue*, 523 F. App'x 796, 799 (2d Cir. 2013) (a challenge that the record must be supplemented by the ALJ will not prevail where the claimant "identifies no specific

record that was missing" and gives no explanation of "how it would have affected [the] case"); *Hunter v. Comm'r of Soc. Sec.*, No. 22-787, 2023 WL 2604913, at *2 (2d Cir. Mar. 23, 2023) (rejecting the argument that the ALJ did not adequately develop the record where "Hunter does not specify which providers' records were missing or what those records would show. The record before the ALJ contained numerous medical evaluations and several medical opinions assessing Hunter's physical and mental impairments. The additional records that Hunter submitted to the Appeals Council do not establish a gap in the record before the ALJ that required reconsideration").

Further, while the record supported lesser mental limitations, the ALJ gave Plaintiff the benefit of the doubt regarding her mental impairments and limited her to a range of simple work. (Tr. 33-37). Courts in this district have addressed similar arguments that the ALJ inappropriately relied on his lay interpretation of the evidence and affirmed the Commissioner where, as here, the ALJ gave Plaintiff the benefit of the doubt and found a more restrictive RFC.[3] *See Anissha W. v. Comm'r of Soc. Sec.*, No. 23-cv-6019, 2024 WL 123521, at *2-3 (W.D.N.Y. Jan. 11, 2024) ("Given the lack of evidence in the record supporting more restrictive limitations, Plaintiff essentially argues that the ALJ erred in giving her the benefit of the doubt with respect to her anxiety and depression. . . . It was within the ALJ's discretion to assess such a limitation to account for her anxiety and depression, even though no medical source opined that Plaintiff required such limitations."); *Deboral Elaine L. v. Comm'r of Soc. Sec.*, No. 6:20-cv-06607, 2022 WL 2662974, at *4 (W.D.N.Y. July 11, 2022) ("It further was not error for the ALJ to afford

---

[3] Plaintiff's reliance on *John C. v. Comm'r of Soc. Sec.*, No. 20-cv-0876, 2021 WL 5027675, at *6 (W.D.N.Y. Oct. 29, 2021), and other such cases is misplaced as the ALJ in those cases did not give Plaintiff the benefit of the doubt and provide for greater limitations than supported by the record.

Plaintiff the benefit of the doubt and assess additional non-exertional limitations despite the lack of support for such limitations in the medical evidence of record"); *see also Thomas W. v. Comm'r of Soc. Sec.,* No. 21-cv-0207, 2023 WL 2633771, at *4 (W.D.N.Y. Mar. 24, 2023) ("It is well established that an ALJ's RFC determination need not be supported by a specific medical opinion, particularly where the plaintiff has failed to adduce evidence inconsistent with the ALJ's RFC determination." (internal citation omitted)). "The ALJ did not, therefore, commit reversible error by giving Plaintiff the benefit of the doubt by including [the] additional [mental] limitation[s] in the RFC, even in the absence of a medical opinion identifying such a requirement." *Anissha W.,* 2024 WL 123521, at *3 (citing to *Jillian R. v. Comm'r of Soc. Sec.,* No. 20-cv-1735, 2022 WL 13697992, at *9 (W.D.N.Y. Oct. 21, 2022)).

Moreover, although Plaintiff argues that ALJ relied on his lay opinion in formulating the mental limitations, she has not shown that she required a more restrictive limitation, as was her burden. *Anissha W.,* 2024 WL 123521, at *3 (citing to *Smith v. Berryhill,* 740 F.App'x 721, 726 (2d Cir. 2018) (summary order) (rejecting argument that ALJ arbitrarily substituted his own judgment for competent medical opinion where plaintiff had duty to prove more restrictive RFC)).

Lastly, the ALJ discussed in detail Plaintiff's severe impairment of idiopathic hypersomnia/narcolepsy. (Tr. 31-33). He cited Plaintiff's treatment records showing that this condition improved significantly when she was prescribed Adderall by her sleep specialists. Her mood improved and she no longer fell asleep during the day. (Tr. 32).

In sum, Plaintiff's argument that remand is required because the ALJ's RFC finding is unsupported by substantial evidence is without merit, and the ALJ's decision must be affirmed.

## CONCLUSION

For the above reasons, Plaintiff's motion for judgment on the pleadings (Dkt. No. 8) is denied and defendant's motion for judgment on the pleadings (Dkt. No.13) is granted. The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated:      May 12, 2026
            Buffalo, New York

MICHAEL J. ROEMER
United States Magistrate Judge